IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RICARDA PRICE**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:10-CV-2202-L** |
| | § | |
| **ADRIANA WASHINGTON** as | § | |
| Representative of the Estate of Gonzalo | § | |
| Orantes, and as Next Friend of His Minor | § | |
| Children, **R.A.O.** and **J.G.O.**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Amended Motion for Summary Judgment, filed March 16, 2012. After careful consideration of the motion, principal briefs, reply, appendices, record, and applicable law, the court **denies** Plaintiff's Amended Motion for Summary Judgment.

**I.     Procedural and Factual Background**

State Farm Insurance Company ("State Farm") originally filed this action on November 2, 2010, as a Complaint for Interpleader against Ricarda Price and Blanca Estela Martinez Garcia, as Representative of the Estate of Gonzalo Orantes. State Farm filed the Complaint for Interpleader because it did not want to subject itself to multiple liability, as more than one person made a claim to the death benefits of a policy issued by State Farm.

On December 19, 2008, State Farm issued Policy Number LF-2609-1952 (the "Policy") to Gonzalo R. Orantes ("Orantes") for $500,000. The primary beneficiary designated on the Policy is Ricarda Price ("Price"). On October 2 or 3, 2009, Orantes died from multiple gunshot wounds. He was found dead in the parking lot of a park in the City of Grand Prairie, Texas. Price reported

the death of Orantes on March 16, 2010, presented a death certificate, and made a claim for the death benefits under the Policy.  On March 3, 2010, State Farm received notification that Blanca Estela Martinez Garcia ("Martinez Garcia") was making an adverse claim for death benefits under the Policy on behalf of Orantes's minor children.  Martinez Garcia made the claim pursuant to section 1103.102(b) of the Texas Insurance Code.

When State Farm filed the Complaint for Interpleader, it also filed a motion and requested that it be allowed to deposit into the court's registry the amount of the Policy ($500,000) plus interest that had accrued on this amount.  The court granted the motion on November 4, 2010. Accordingly, State Farm deposited into the registry of the court the sum of $500,000 plus applicable interest that had accrued on the Policy amount.  On December 15, 2010, the court entered an agreed order in which State Farm was discharged and released from any further liability or participation in this action, and also discharged State Farm from any claims that the remaining parties might have against it arising out of the Policy or proceeds of the Policy issued to Orantes.

On June 14, 2011, the court realigned the parties to avoid confusion and realigned Price as Plaintiff, as she was the first party to appear and file an answer, counterclaim, and crossclaim.  The court realigned Martinez Garcia as Defendant.  On December 7, 2011, the court substituted Adriana Washington ("Washington") in place of Martinez Garcia as Representative of the Estate of Gonzalo Orantes and as next friend of his minor children, R.A.O. and J.G.O.,[*] because Martinez Garcia resigned as administrator and a Texas probate court with jurisdiction over the case appointed a new independent administrator.  Washington has filed counterclaims pursuant to the Texas Wrongful

---

[*]The court **directs** the clerk of the court to amend the docket sheet to reflect that Adriana Washington has been substituted for Martinez Garcia as Defendant in this case and amend the caption as herein set forth by the court.

Death Act (Tex. Civ. Prac. & Rem. Code Ann. §§ 71.002, 71.004 (West 2008)) and the Texas

Survival Statute (Tex. Civ. Prac. & Rem. Code Ann. § 71.021 (West 2008)).

## II.      Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute

as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas

Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine"

if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary

judgment, the court is required to view all facts and inferences in the light most favorable to the

nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift

Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility

determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v.

Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the

nonmoving party's case, the party opposing the motion must come forward with competent summary

judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus.

Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  "[When] the record taken as a whole could not lead

a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.*

(citation omitted).  Mere conclusory allegations are not competent summary judgment evidence, and

thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325

(5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation

are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.   Analysis

### A.   Contentions of the Parties

Price contends that she is entitled to summary judgment because there is no genuine dispute of material fact that she is the designated beneficiary of the Policy and that she therefore is entitled to the proceeds of the Policy.  Price contends that there is no evidence to support Washington's assertion that she directly, or through another person for whom Price was criminally responsible, willfully caused the death of Orantes.  She further contends that there is no evidence to support Washington's claims under the Texas Wrongful Death Act and the Texas Survival Statute, and that those claims therefore fail.  Washington counters that the record, through circumstantial evidence,

raises a genuine dispute of material fact regarding Price's role in Orantes's death.  Admittedly, the summary judgment evidence presents a close call; however, the court concludes that the evidence at this juncture raises a genuine dispute of material fact regarding Price's role, if any, in Orantes's death.

### B.      Applicable Law

A designated beneficiary is entitled to receive the proceeds of a life insurance policy upon the death of the insured, and the life insurance company must pay the proceeds that become due on the death of the insured to the designated beneficiary.  Tex. Ins. Code Ann. § 1103.102(a) (West 2009).  An insurance company is not obligated to pay such proceeds if it "receives notice of an adverse claim to the proceeds from a person who has a bona fide legal claim to all or part of the proceeds." *Id.* § 1103.102(b).  Further, "[a] beneficiary of a life insurance policy or contract forfeits the beneficiary's interest in the policy or contract if the beneficiary is a principal or an accomplice in willfully bringing about the death of the insured." *Id.* § 1103.151.  Accordingly, the resolution of the summary judgment motion turns on whether a genuine dispute of material fact has been raised or created that Price is a principal or an accomplice in willfully bringing about the death of Orantes.

### C.      Discussion

The court notes that much of the evidence submitted by the parties is not relevant to its determination of the summary judgment motion.  Moreover, some of the evidence is legally inadmissible and will not be permitted at trial.  For example, most, if not all, of the information regarding the polygraph examination of Price is inadmissible, and the court did not rely on it in reaching its decision.  Further, there is significant hearsay in the appendices submitted by the parties, which the court declined to consider in reviewing the summary judgment motion.  Notwithstanding

the legally deficient evidence, the court believes that sufficient evidence exists to raise or create a genuine dispute of material fact regarding Price's role, if any, in bringing about Orantes's death. While none of the evidence standing alone is sufficient to create a fact question, the evidence collectively raises a genuine dispute of material fact regarding the issue that is key to the resolution of this case. The court now discusses the evidence that it believes is sufficient to create a fact question.

First, there is the statement by Price made in the presence of Detectives Alan Frizzell and Tracy Hinson (two Grand Prairie police detectives assigned to investigate the murder of Orantes) and Andy Sheppard that she did not mean for Orantes to be killed. She stated that she was "just joking" with the person who ended up offering someone else $1,000 to kill Orantes. Price refused to provide the detectives with the name of any of these individuals because she is afraid that the person or persons will kill or harm her. The court determines that this evidence has probative value with respect to Price's role in Orantes's death and necessarily involves the credibility of Price. The role of assessing the credibility of witnesses, their demeanor, how much of their testimony to believe and the weight to be given such testimony falls squarely within the province of the jury. A court may not make credibility assessments or weigh evidence. *Reeves*, 530 U.S. at 150. In other words, whether the jury believes Price or the police officers, in part, whole, or not at all, is its call to make.

Second, during the course of Price's deposition, she was asked to provide the names of Orantes's two minor children. She could not recite or provide the names. This is of particular importance, as the reason, accordingly to the record before the court, that Orantes named Price as beneficiary of the Policy was because she was supposed to care for his two minor children if he died – two children whose names she could not recall during her deposition. Her testimony is probative

of her intent and whether caring for Orantes's two children was the true reason that she was designated as the beneficiary of the Policy.  The evidence is also probative of whether Price had any ulterior motive in being named as beneficiary.  Of course, the jury could determine the evidence is of no moment; however, all of this is a decision for the jury, not the court, to make.

Third, according to the deposition testimony of Tracy R. Hinson, one of the detectives assigned to investigate the murder of Orantes, Price was told she and the police officers would not discuss the criminal case until they returned to the police station; nevertheless, while en route, Price asked the police officers whether college classes or courses were offered in prison because she wanted to take college classes.  This evidence is probative of Price's role, if any, in Orantes's death.  This statement goes directly to Price's state of mind.  A reasonable jury would want to know why Price would inquire about college courses in prison if she were not involved in Orantes's death.  In other words, the question can be viewed as "consciousness of guilt," that is, an acknowledgment by Price (her state of mind) that she was involved in the death of Orantes, that she would be convicted, and that she would be sentenced to prison as a result of conviction.  At a minimum, the question could be viewed as Price thinking that she might be convicted for complicity in Orantes's murder.  Price may deny that she even inquired about college courses in prison or that the question was taken out of context; however, these are matters for the jury to decide, and it can make that decision only after hearing and observing the witnesses, and deciding how much weight, if any, to ascribe to Price's inquiry regarding college courses in prison.  Likewise, the court finds the recorded jail statement that Price made on the telephone to Merlyn Santos ("Santos") about "getting the insurance money" and the statement made by Santos ordering Price "to shut the hell up" are relevant to the issues presented in this case and must be evaluated by the jury.

**Memorandum Opinion and Order - Page 7**

Fourth, Hinson stated that Price changed her story several times or made inconsistent statements during the course of the investigation.  Whether Price actually changed her story, lied, or made inconsistent statements during the course of the investigation, once again, is something for the jury to consider.  Such matters go directly to Price's credibility.  Whether a statement was inconsistent or a lie has to do with whether it is one that is false and misleading, whether it reflects an innocent lapse of memory, or whether it is taken out of context and needs further clarification or explanation — all of which falls exclusively within the province of the jury.  Moreover, a jury has to determine whether the inconsistency relates to an important issue in the case or only to some unimportant detail.

Finally, the court notes that some evidence has been taken out of context and that its significance has been overstated.  For example, Price contends that, according to Detective Hinson's deposition testimony, the Grand Prairie Police Department only has a "hunch" or "suspicion" that she had any involvement in Orantes's death.  First, the court, not Detective Hinson, determines the sufficiency of the evidence as to whether a genuine dispute of material fact exists.  Second, the court is not obligated to accept Price's characterization of the evidence.  Price takes Hinson's statement that the Grand Prairie Police Department had no evidence that she "knowingly caused the death of Orantes" out of context.  The court acknowledges that there is no physical evidence linking Price to Orantes's death, but that is not the end of the story.  This is a circumstantial evidence case, and the law makes no distinction between the weight a jury may give to direct or circumstantial evidence.  A jury, of course, may make reasonable deductions and conclusions that are supported by the evidence.  A jury, however, may not make or draw inferences that are speculative or conjectural.

**Memorandum Opinion and Order - Page 8**

Further, that no murder case has been filed against Price is quite beside the point.  The Dallas County District Attorney's Office decides whether a felony case is presented to the grand jury; that is, the decision to move forward with the prosecution of an individual rests solely with the prosecuting attorney.  Also, the standards of proof in a civil trial and criminal trial are different.  In a criminal trial, the burden of proof is beyond a reasonable doubt, while in a civil case, such as this one, the burden of proof is a preponderance of the evidence, a much lower standard.  Plaintiff seems to assess the evidence in terms of the "beyond a reasonable doubt" standard; however, that there may be insufficient evidence to convict Price for capital murder or murder does not preclude the existence of sufficient evidence to raise a genuine dispute of material fact by a preponderance of the evidence as to whether Price willfully brought about the death of Orantes.

## IV.    Miscellany

### A.    Defendant's Wrongful Death and Survival Counterclaims

Washington brings counterclaims against Price pursuant to the Texas Wrongful Death Act and the Texas Survival Statute.  The Texas Wrongful Death Act "confers a cause of action upon the surviving spouse, children, and parents of a decedent for their damages resulting from the decedent's death."  *THI of Texas at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 568 (Tex. App. — Amarillo 2010, pet. denied) (citation omitted). On the other hand, the Texas Survival Statute allows "a decedent's heirs, legal representatives, and estates to bring actions for personal injury the decedent suffered before his death."  *Id.*  In light of the court's ruling on Price's claim and the overlapping evidence between Price's claim and Washington's counterclaims, the court does not believe dismissal of Washington's counterclaims is warranted at this time and will deny Price's request for summary judgment on Washington's counterclaims.

### B.     Evidentiary Matters

As the court previously stated, much of the evidence submitted or referenced by the parties is inadmissable.  Information concerning the polygraph, the anonymous call from Mexico to the Grand Prairie police detective regarding Price's alleged involvement with Orantes's death, certain opinion testimony, certain records containing hearsay that does not fall within one of the recognized exceptions to the hearsay rule, and any declarations, statements or testimony of the attorneys in this case will not be admitted during trial.  The court disregarded such evidence during its review of the summary judgment motion.  It is incumbent upon counsel to ensure that evidence is legally admissible.  If evidence is not legally admissible, the court will not allow its introduction at trial. The court admonishes the parties in advance so that they may take the necessary steps to ensure that evidence offered at trial is legally admissible.

### C.     Settlement and Mediation

Now that the court has ruled, the parties are in a better position to assess the strengths and weaknesses of their respective claims and defenses.  Bluntly speaking, neither side is "out of the woods."  Given the current posture of the case, the court believes that the parties should seriously consider settlement.  The court believes that the best approach is to order a mediation or settlement conference before a United States Magistrate Judge and will do so by separate order.

## V.     Conclusion

For the reasons herein stated, the court determines that a genuine dispute of material fact exists with respect to Price's role in bringing about or causing the death of Orantes and Washington's wrongful death and survival counterclaims.  Accordingly, the court **denies** Plaintiff's Amended Motion for Summary Judgment.

**Memorandum Opinion and Order - Page 10**

**It is so ordered** this 19th day of June, 2012.

Sam A. Lindsay
United States District Judge